## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JENNY MCCLOUGH and VICTORIA GARCIA, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>LUNA PHARMACEUTICALS, INC. d/b/a PREMAMA,<br><br>         Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.      Defendant Luna Pharmaceuticals, Inc. d/b/a Premama ("Premama") is a fertility supplement company that peddles false hope to people who are trying to have children.

2.      Conception can sometimes be difficult, and modern interventions — while sometimes effective — can be expensive.  So it's not surprising that some people would consider supplements as a possible way to improve the chances of conception.  Deceptive claims about fertility supplements can play on the emotions of individuals who are struggling to conceive.

3.      At best, bogus fertility supplements give false hope and are a waste of time and money.  At worst, they can result in harmful side effects.

4.      Fertility supplements that falsely imply they can improve the chances of conception can also potentially harm consumers who use these products instead of seeking effective treatments, such as drugs or assisted reproductive technology approved by the U.S. Food and Drug Administration ("FDA").  The FDA has not approved fertility supplements as a method for increasing the chances of conception.

5.      The fertility supplement industry is facing booming growth, due in part to declining fertility rates.  The fertility supplement market was estimated at USD $1.7 billion in 2020 and is expected to grow to $2.6 billion by 2026.[1]

6.      Premama is one of several companies in the United States that preys on people having difficulties conceiving.  Premama markets and sells  two related supplement products called "Fertility Support for Her" and "Fertility Support for Him" (collectively "Fertility Support") that claim to increase chances of conception.  The products are expensive and the marketing is bold.  Displayed prominently on the product packaging, directly underneath the product name, is the large word "Conceive."  Premama claims that Fertility Support "optimizes your chances of conception" and tells purchasers to use the product "for at least 3 months or until you become pregnant."  Premama implies that certain marquee ingredients in Fertility Support like myo-inositol and folate are clinically proven to increase the chances of conception, but that is false.  Taking Fertility Support does not improve the chances of conception, yet that is the product's only purported purpose.

7.      Premama knows perfectly well that its products do not help people conceive.  In 2019, Premama privately admitted in an email to a non-profit watchdog organization that "**I think you'll be hard pressed to find any supplement company that can definitively say that their product increases the chances of becoming pregnant.  If you do, I'd be very curious to see.**"  That admission is directly contrary to everything Premama says and implies about Fertility Support's effectiveness.

8.      Therefore, Plaintiffs Victoria Garcia and Jenny McClough have filed this class action on behalf of themselves and other U.S. purchasers of Fertility Support.  They seek actual

---

[1] https://www.expertmarketresearch.com/reports/fertility-supplements-market

damages, statutory damages, restitution, injunctive relief, and all other relief available under the causes of action asserted here.

## PARTIES

9.      Plaintiff Victoria Garcia is domiciled in New York.  In or around January 2021, she purchased Fertility Support for Her and Fertility Support for Him.  The products cost approximately $35 each.  Ms. Garcia purchased the products directly from Premama's website, and she was in New York when she made her purchase.  Before purchasing the products, Ms. Garcia reviewed and relied on the representations made on the product packaging and the information provided about the products on Premama's website.  Based on the product name, packaging, and information disclosed on the website, Ms. Garcia believed that Fertility Support for Her and Fertility Support for Him would improve her chances of conception.  It did not have that effect.  Had Ms. Garcia known the truth about the products' ineffectiveness, she would not have purchased them.

10.      Plaintiff Jenny McClough is domiciled in California.  On April 15, 2021, she purchased Fertility Support for Her.  The product cost approximately $35.  Ms. McClough purchased the products from a Target store in California.  Before purchasing the products, Ms. McClough reviewed and relied on the representations made on the product packaging and the information provided about the products on the product page of Premama's website.  Based on the product name, packaging, and information disclosed on the website, Ms. McClough believed that consuming Fertility Support for Her would improve her chances of conception.  It did not have that effect.  Had Ms. McClough known the truth about the product's ineffectiveness, she would not have purchased it.

11.      Defendant Luna Pharmaceuticals, Inc. d/b/a Premama ("Premama") is a

Delaware corporation with its headquarters in Providence, Rhode Island.

## FACTUAL BACKGROUND

12.    The two products at issue in this case are called "Fertility Support for Her" and "Fertility Support for Him."

13.    Premama manufactures, distributes, advertises, and sells Fertility Support for Her and Fertility Support for Him.

14.    Premama sells Fertility Support for Her and Fertility Support for Him directly to consumers through its website premamawellness.com and through its Amazon store.

15.    Premama also sells Fertility Support for Her and Fertility Support for Him through major U.S. retailers like Target and Walmart.

16.    The conduct at issue here occurred at all times during the last four years, at least.

**I.    Premama's Expensive, Four-Stage Pregnancy "System"**

17.    Premama sells maternity supplements for people who want to conceive, who are already pregnant, or who have recently given birth.  Premama does not target any other demographic for its products.

18.    Premama sells a four-stage nutritional supplement "system" that supposedly supports women "through each stage of maternity."  The four stages of the system are called "Cleanse," "Conceive," "Carry," and "Care."  For each stage of the system, Premama sells a variety of corresponding supplements and drink mixes.





19.    The products in Premama's system are expensive.  For a couple trying to conceive, adhering to Premama's recommended daily intake of the products can easily cost $400 or more.

20.    Stage 1 of the Premama system is called "Cleanse" and involves a berry-flavored drink mix called "Birth Control Cleanse."  Premama claims this Stage 1 product "resets" and "prepares the body for pregnancy" by offsetting the effects of synthetic birth control hormones.  One package of Birth Control Cleanse costs about $60 and provides enough drink mix to last a month.  Premama tells consumers they should use Birth Control Cleanse for two to three months.

21.    Stage 2 of Premama's system is called "Conceive," and its corresponding products are two, related drink mixes called Fertility Support for Her and Fertility Support for Him..  These are the product at issue in this lawsuit and they are addressed more fully below.  In a nutshell, Premama falsely claims that taking Fertility Support helps people conceive.  One package of

Fertility Support cost about $30-35 and provides enough drink mix to last a month. Premama tells consumers that they should use Fertility Support for three months "or until conception occurs." Unlike products associated with the other stages of Premama's system, Fertility Support is marketed to women and men.

22.     Stage 3 is called "Carry," and the corresponding Stage 3 products are for people who are already pregnant. These products include a range of prenatal vitamins, gummies, and drink mixes for use during the entire nine months of pregnancy. Stage 3 products cost around $25-$35 per bottle, with each bottle containing about one month of supplements.

23.     Stage 4 is called "Care," and includes a range of postnatal vitamins and drink mixes that Premama claims promote recovery after giving birth, support lactation, and alleviate postpartum depression. Stage 4 products cost $20-$50 per bottle, with each bottle containing about one month of supplements.

## II.     Premama Misleads Consumers into Believing That "Fertility Support" Products Increase the Chance of Becoming Pregnant

24.     Premama makes numerous misleading statements on the product labeling and on its website that have the tendency or capacity to confuse or mislead reasonable consumers into believing that Fertility Support improves the chances of conceiving, and shown in the photos below:

//

//

//

//

//

//



25.    First and foremost, the front of every product packaging displays the product name "Fertility Support for Her" or "Fertility Support for Him" with the word "Conceive" prominently displayed under the product name.  This strongly suggests that the purpose of the product is to improve the chances of conception.

26.    Several other statements on the side of the packaging reinforce the impression that the purpose of Fertility Support is to improve the chances of conception.  The side of the packaging of Fertility Support for Her states, "Premama Fertility Support should be taken every day, including during menstruation, while trying to conceive."

27.    The same side of the packaging also highlights two marquee ingredients in the product called myo-inositol and folate, stating, "Myo-Inositol is clinically shown to support ovulatory function and egg quality," and that folate is "the necessary ingredient in prenatal vitamins for early fetal development."  These statements are misleading in the context of the packaging because consuming myo-inositol or folate do not increase the chances of conception.



28.     Similarly, the side of the packaging of Fertility Support for Him states the product should be taken "once daily while trying to conceive."

29.     The same side of the packaging of Fertility Support for Him also highlights the presence of vitamin E in the product, stating vitamin E "is clinically proven to increase sperm mobility and function." This statement is misleading in the context of the packaging because consuming vitamin E does not improve the chances for conception.

30.     Many people buy Fertility Support directly from Premama through its website. That website contains several statements about Fertility Support for Her that reinforce the impression that drinking Fertility Support will increase the chances of conception:

8

- "Proven to optimize your chances of conception with Myo-Inositol."

- "Optimize egg quality & ovulation while trying to conceive."

- "Take Fertility Support For Her daily while trying to conceive for at least 3 months or until you become pregnant."

- "If trying to conceive, we recommend pairing this drink mix with our Prenatal Vitamin."

31. Premama's website also contains several statements about Fertility Support for Him that reinforce the impression that drinking Fertility Support will increase the chances of conception:

- "It takes two to tango, support your partner's sperm health to optimize chances of conception."

- "It's recommended that you take Fertility Support For Him for 3 months (the time required to nurture new sperm to maturity), or until conception occurs."

- "A chocolate flavored drink mix formulated with male fertility vitamins to support male reproductive health and improve sperm quality, motility, morphology, and function."

32. The packaging and website do not suggest that Fertility Support is suitable or recommended for anything *other* than improving the chances for conception.

## III.  Taking Fertility Support Does Not Increase the Chances of Becoming Pregnant.

33. Drinking Fertility Support does not optimize or improve the chances of becoming pregnant. None of the ingredients in Fertility Support improve the chances of becoming pregnant, or alternatively, the amounts of the ingredients in Fertility Support are too low to improve the chances of becoming pregnant.

34. In 2019, Premama made a statement that contradicts everything it tells consumers about Fertility Support. That year, the Center for Science in the Public Interest ("CSPI") asked Premama whether there are any scientific studies showing that women who take Fertility Support are more likely to become pregnant. Here was Premama's response:

9

We do not have funding at this juncture to conduct clinical studies on the effectiveness. We rely on clinical research of our active ingredients. **I think you'll be hard pressed to find any supplement company that can definitively say that their product increases the chances of becoming pregnant.** If you do, I'd be very curious to see.

35.    Moreover, as alleged above, the packaging for Fertility Support for Her states, "Myo-Inositol is clinically shown to support ovulatory function and egg quality," but that statement is misleading.  No specific studies are cited on the packaging.  In 2019, the CSPI asked Premama to identify the myo-inositol studies that are alluded to on the product packaging.  Premama cited two studies, but neither study showed that myo-inositol was any more effective than a placebo.  None of these facts are disclosed on the packaging of Fertility Support for Her.

36.    Although Premama lacks substantiation for its claims that Fertility Support supports fertility and improves the chances of conception, that is not the basis for the claims alleged here. Instead, the crux of this case is that—irrespective of Premama's lack of substantiation—Fertility Support does not improve the chances for conceiving, which is contrary to the product labeling and marketing.

## JURISDICTION AND VENUE

37.    This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant Premama.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

38.    This Court has personal jurisdiction over Premama because Premama's headquarters are in Providence, Rhode Island.

39.    Venue is proper under 28 U.S.C. § 1391(b)(1) because Premama resides in this judicial district.

40.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial district.

## CLASS ACTION ALLEGATIONS

41.     <u>Class Definition</u>: Plaintiffs brings this class action on behalf of themselves and as a class action on behalf of the following putative classes:

> (a) **<u>Nationwide Class</u>**:  All people in the United States who purchased Fertility Support.
>
> (b) **<u>California Sub-Class</u>**:  All people in California who purchased Fertility Support.
>
> (c) **<u>New York Sub-Class</u>**:  All people in New York who purchased Fertility Support.

42.     Excluded from each of the above-listed putative classes are: (1) Premama and all directors, officers, employees, partners, principals, shareholders, and agents of Premama; and (2) the Judges presiding over the Action and members of their families and judicial staff.

43.     Subject to additional information obtained through discovery, the foregoing class definitions may be modified or narrowed by an amended complaint, or at class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

44.     Members of the putative classes are so numerous that their individual joinder is impracticable.  On information and belief, members of the putative classes number in the thousands.  The precise number of class members and their identities are unknown to Plaintiff sat this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

45.    Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to:

(a)    whether Defendant committed the conduct alleged herein;

(b)    whether Defendant's conduct constitutes the violations of laws alleged herein;

(c)    whether Defendant's labeling and advertising alleged herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

(d)    whether Defendant knew or should have known that the representations were false or misleading;

(e)    whether Defendant's representations, concealments and non-disclosures concerning Fertility Support are likely to deceive the consumer;

(f)    whether Plaintiffs and the Class are entitled to actual damages, statutory damages and/or restitution

46.    The claims of the named Plaintiffs are typical of the claims of the putative class members in that the named Plaintiffs and the class members sustained damages as a result of Defendant's uniform wrongful conduct.

47.    Plaintiffs are adequate representatives of the putative class because their interests do not conflict with the interests of the class members they seek to represent; they retained competent counsel experienced in prosecuting class actions; and they intend to prosecute this action vigorously.  The interests of class members will be fairly and adequately protected by Plaintiffs and their counsel.

48.    The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of class members. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of New York GBL § 349

49.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.     Plaintiff Garcia brings this claim individually and on behalf of members of the proposed New York subclass against Defendant.

51.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

52.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning of New York's General Business Law § 349.

53.     Plaintiff Garcia and members of the subclass are consumers who purchased products from Defendant for their personal use.

54.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices.

13

55.    The foregoing deceptive acts and practices were directed at consumers.

56.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of Fertility Support to induce consumers to purchase same.

57.    By reason of this conduct, Defendant violated New York's General Business Law.

58.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Garcia and members of the subclass have sustained from having paid for and consumed Defendant's products.

59.    As a result of Defendant's violations, Plaintiff Garcia and members of the subclass have suffered damages because: (a) they would not have purchased Fertility Support on the same terms if they knew that the products were not sold as advertised; (b) they paid a price premium for Fertility Support due to Defendant's misleading conduct; and (c) Fertility Support does not have the characteristics, ingredients, uses, or benefits promised.

60.    On behalf of herself and other members of the subclass, Plaintiff Garcia seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violations of New York GBL § 350

61.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.    Plaintiff Garcia brings this claim individually and on behalf of members of the proposed New York subclass against Defendant.

63.    New York's General Business Law § 350 prohibits false advertising in the

conduct of any business, trade, or commerce.

64.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

65.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

66.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

67.     Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

68.     Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

69.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, Plaintiff and the subclass have suffered economic injury.

70.     As a result of Defendant's violations, Plaintiff Garcia and members of the subclass have suffered damages because: (a) they would not have purchased Fertility Support on the same terms if they knew that the products were not sold as advertised; (b) they paid a price premium for Fertility Support due to Defendant's misleading conduct; and (c) Fertility Support does not have the characteristics, ingredients, uses, or benefits promised.

71.     On behalf of herself and other members of the Subclass, Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
**California's Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq* ("CLRA")**

72.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     Plaintiff McClough brings this claim individually and on behalf of members of the proposed California subclass against Defendant.

74.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

75.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

76.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

77.     Defendant violated these provisions by making the false and misleading statements alleged in this complaint.

78.      As a result of Defendant's violations, Plaintiff McClough and members of the subclass have suffered damages because: (a) they would not have purchased Fertility Support on the same terms if they knew that the products were not sold as advertised; (b) they paid a price premium for Fertility Support due to Defendant's misleading conduct; and (c) Fertility Support does not have the characteristics, ingredients, uses, or benefits promised.

79.     Before filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  The letter was sent via certified

mail, return receipt requested, advising Defendant that it violated the CLRA and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.

80.    Plaintiff McClough seeks all available relief under the CLRA.

## **<u>COUNT IV</u>**
## **Violation Of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200,** *et seq.*

81.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.    Plaintiff McClough brings this claim individually and on behalf of members of the proposed California subclass against Defendant.

83.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

84.    Defendant's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein.

85.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL because its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

86.    Defendant violated the "fraudulent" prong of the UCL by making false and misleading statements about Fertility Support, as described herein.

87.    Plaintiff seeks all available relief under the UCL.

//

## COUNT V
## Breach of Express Warranty

88.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     Plaintiffs bring this claim individually and on behalf of members of the proposed Class and the New York and California subclasses against Defendant.

90.     As the designer, manufacturer, marketer, distributor, and seller, Defendant expressly warranted that Fertility Support "optimizes your chances of conception."

91.     However, Fertility Support cannot provide any appreciable benefit to consumers, and does not optimize or enhance an individual's chances of conceiving.

92.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Class have been injured and harmed because: (a) they would they would not have purchased the Ginkgo Smart on the same terms if the true facts were known about the product; (b) they paid a price premium for Fertility Support due to Defendant's promises that it would improve chances of conception; and (c) Fertility Support did not have the characteristics as promised by Defendant.

93.     On September 1, 2021, a pre-suit notice letter was served on Defendant which complied in all respects with U.C.C. § 2-607.  Plaintiffs and the Class sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.

## COUNT V
## Unjust Enrichment

94.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

95.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and the New York Subclass against Defendant.

96.    Plaintiffs and Class Members conferred benefits on Defendant by purchasing Fertility Support.

97.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Fertility Support.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented that Fertility Support would provide consumers with enhanced and increased likelihood of conception.  This misrepresentation caused injuries to Plaintiffs and Class Members, because they would not have purchased Fertility Support if the true facts regarding the effectiveness of the products were known.

98.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

99.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs representatives of the putative classes and/or subclasses and Plaintiffs' attorneys as Class Counsel.

B.    For an order declaring that Defendant's conduct as described herein violates the law;

C.    For an order finding in favor of Plaintiff and the putative classes on all counts asserted herein;

D.    For prejudgment interest on all amounts awarded;

E.       For an order awarding damages, statutory damages, restitution, and any other relief deemed appropriate;

F.       For injunctive relief as pleaded or as the Court may deem proper; and;

G.       For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: November 9, 2021                    Respectfully submitted,

By: */s/ Stephen M. Prignano*
        Stephen M. Prignano

**McINTYRE TATE LLP**
STEPHEN M. PRIGNANO (3649)
50 Park Row West, Suite 109
Providence, Rhode Island 02903
Telephone: (401) 351-7700
Facsimile: (401) 331-6095
E-Mail:  sprignano@mcintyretate.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, *pro hac vice forthcoming*
701 Brickell Ave., Suite 1420
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith, *pro hac vice forthcoming*
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Email: jsmith@bursor.com

*Attorneys for Plaintiffs*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

3          I, Joel D. Smith, declare as follows:

4          1.      I am an attorney at law licensed to practice in the State of California and a member

of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs in

5

this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a

6

witness, I could and would competently testify thereto under oath.

7          2.      The Complaint filed in this action is filed in the proper place for trial under

8

California Civil Code Section 1780(d) because Defendant does business in this county and/or a

9

substantial portion of the transactions at issue occurred in this county.

10

11          I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct, executed at Walnut Creek, California on November 10, 2021.

12

13

14

15

16          _____

17                              Joel D. Smith

18

19

20

21

22

23

24

25

26

27

28